

U.S. DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FILED   JUL 0 6 2017

CLERK

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**INDICTMENT FOR**
**CONSPIRACY TO COMMIT HEALTH CARE AND WIRE FRAUD,**
**WIRE FRAUD, HEALTH CARE FRAUD,**
**AND FORFEITURE ALLEGATIONS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 17-85-SDD-RLB |
| | : | |
| *versus* | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1347 |
| JOHN EASTHAM CLARK, M.D. and | : | 18 U.S.C. § 1349 |
| CHARLENE ANITA SEVERIO | : | 18 U.S.C. § 2 |
| | : | 18 U.S.C. § 982(a)(7) |
| | : | 18 U.S.C. § 982(a)(1)(c)) |
| | : | 28 U.S.C. § 2461 |

**THE GRAND JURY CHARGES**:

### Background

1.     The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS").

2.     The Louisiana Health Service and Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA") was a Louisiana not-for-profit health and accident insurance company that provided health care benefits to member entities and individuals, and offered supplemental health insurance to members receiving Medicare.

3.     Medicare and BCBSLA were "health care benefit programs," as defined by Title 18, United States Code, Section 24(b).

A. Ptashkin

4.     Individuals who qualified for Medicare benefits were commonly referred to as "beneficiaries." Individuals who contracted with BCBSLA to receive health care benefits were commonly referred to as "members." Each beneficiary was given a Medicare identification number and each member was given a BCBSLA contract identification number.

5.     Medicare and BCBSLA health care benefits were subdivided into multiple parts. Medicare Part B and BCBSLA Outpatient Services covered office visits, minor surgical procedures, including the injection of medications ("injection therapy"), as well as laboratory services, including urine drug testing ("UDT"), among a variety of other items and services.

6.     Medical service providers, including clinics, laboratories, and physicians ("service providers"), that met certain criteria could obtain Medicare and BCBSLA provider numbers, which allowed them to submit claims to Medicare and BCBSLA seeking reimbursement for the cost of services provided.

7.     In order to receive payment from Medicare and BCBSLA, service providers were required to submit health insurance claim forms either in hard copy or electronically. When the forms were submitted, service providers certified that: (1) the contents of the forms were true, correct, and complete; (2) the forms were prepared in compliance with the laws and regulations governing Medicare and BCBSLA; and (3) the services purportedly provided as set forth in the claims were medically necessary.

8.     BCBSLA administered its Part B program in Louisiana.

9.     For beneficiaries residing in Louisiana, Medicare Part B was administered by Pinnacle Business Solutions and Novitas Solutions, which, pursuant to contracts with HHS, served as contracted carriers to receive, adjudicate, and pay Medicare Part B claims submitted to them by service providers as well as beneficiaries.

2

10.    From in or around 1989 through in or around August of 2012, Pinnacle Business Solutions received and processed Medicare Part B claims originating in Louisiana in Little Rock, Arkansas.

11.    Beginning in or around August of 2012, Novitas Solutions received and processed Medicare Part B claims originating in Louisiana in Mechanicsburg, Pennsylvania.

12.    Both Medicare, through its contracted carriers, and BCBSLA reimbursed service providers directly for the cost of minor surgical procedures, including injection therapy, furnished to eligible beneficiaries and members provided that those treatments were ordered by a licensed physician who certified that the treatments were medically necessary.

13.    Both Medicare and BCBSLA included in its reimbursement of claims for minor surgical procedures the accompanying office visits that occurred on the same dates of service as the minor surgical procedures. Accordingly, neither Medicare nor BCBSLA would separately reimburse service providers for office visits that accompanied same-day minor surgical procedures.

14.    Both Medicare, through its contracted carriers, and BCBSLA reimbursed service providers directly for the cost of UDT furnished to eligible beneficiaries and members provided the UDT were medically necessary.

15.    UDT was divided into two categories: initial screens and confirmatory tests. Initial screens were used to identify which substances, if any, were present in the provided specimen, and were therefore considered *qualitative*. Confirmatory tests, conducted subsequent to initial screens, were typically *quantitative*, in that they identified how much of a particular substance was present in the provided specimen.

16.     Where an initial screen produced an unexpected result, or reflected the presence of a substance that had been prescribed by the individual's treating physician, BCBSLA considered a quantitative confirmatory test to be medically necessary and therefore reimbursable.  Similarly, where an initial screen produced an unexpected result, Medicare considered a quantitative confirmatory test to be medically necessary, and reimbursable.

17.     Neither Medicare nor BCBSLA would reimburse service providers for quantitative confirmatory tests of substances that were neither prescribed by treating physicians nor which generated unexpected results in initial screens.

18.     The medical and other documentation supporting claims for services, as required by Medicare and BCBSLA, was not submitted to Medicare and BCBSLA.  Rather, the service providers were required to retain such documentation at their premises and produce these documents upon request by Medicare, or their contracted carriers, and BCBSLA.

### The Defendants and Relevant Entities

19.     Louisiana Spine & Sports, LLC ("Louisiana Spine & Sports") was a Louisiana Limited Liability Company, incorporated in 1998 and headquartered at 4545 Bluebonnet Boulevard, Baton Rouge, Louisiana. Louisiana Spine & Sports provided pain management services to Medicare beneficiaries and BCBSLA members, and others.

20.     Defendant **JOHN EASTHAM CLARK, M.D.**, a resident of Baton Rouge, Louisiana, co-owned and operated Louisiana Spine & Sports, as well as served as its Medical Director. **CLARK** applied for, and obtained, a Medicare provider number in 1987 and a BCBSLA provider number in 2000. In so doing, **CLARK** agreed to abide by all laws and regulations of the Medicare and BCBSLA programs.

4

21.     Defendant **CHARLENE ANITA SEVERIO**, a resident of Walker, Louisiana, served as Louisiana Spine & Sports' billing supervisor.

## COUNT 1
### Conspiracy to Commit Wire Fraud and Health Care Fraud
### (18 U.S.C. § 1349)

### The Conspiracy and Its Object

22.     Paragraphs 1 through 21 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

23.     Beginning in or around June 2005 and continuing through in or around March 2015, in the Middle District of Louisiana, and elsewhere, the defendants **JOHN EASTHAM CLARK, M.D.** and **CHARLENE ANITA SEVERIO** conspired and agreed with each other, and others known and unknown to the grand jury, to commit certain offenses against the United States, that is:

a.     to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such a scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

b.     to knowingly and willfully execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, BCBSLA, and other health care benefit providers, and to obtain, by means of material false and fraudulent pretenses, representations, and promises,

5

money owned by and under the custody and control of Medicare, BCBSLA, and other health care benefit programs, in connection with the delivery of and payment for health care benefits and services, in violation of Title 18, United States Code, Section 1347.

## Purpose of the Conspiracy

24.    It was a purpose of the conspiracy for the defendants to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare, BCBSLA, and other health care benefit programs for services that were not provided in the manner claimed for reimbursement; (b) concealing the submission of false and fraudulent claims to Medicare, BCBSLA, and other health care benefit programs; and (c) diverting proceeds of the fraud for the personal use and benefits of the defendants and their co-conspirators.

## Manner and Means

25.    The manner and means by which the defendants sought to accomplish the object of the scheme included, among others, the following:

a.    **CLARK** routinely conducted office visits with Medicare beneficiaries, BCBSLA members, and the recipients of benefits of other health care benefit programs receiving pain management services at Louisiana Spine & Sports, and preformed minor surgical procedures on such individuals in connection with the office visits, during the course of a single day.

b.    To maximize reimbursements from Medicare, BCBSLA, and other health care benefit programs, **CLARK** and **SEVERIO**, through the use of interstate wire transmissions, submitted or caused others to submit fraudulent claims to Medicare, BCBSLA, and other health care benefit programs purporting that **CLARK**, and others, had performed

6

minor surgical procedures in such a way to substantiate higher reimbursements, when in actuality, **CLARK** and others, did not perform the minor surgical procedures in such a way.

      c.     To maximize reimbursements from Medicare, BCBSLA, and other health care benefit programs, **CLARK** and **SEVERIO**, through the use of interstate wire transmissions, submitted or caused others to submit fraudulent claims to Medicare, BCBSLA, and other health care benefit programs purporting that **CLARK,** and others, had provided minor surgical procedures, including injection therapy, on a day subsequent to the day the minor surgical procedures were actually performed so that Medicare, BCBSLA, and other health care benefit programs separately reimbursed both the minor surgical procedures as well as the accompanying office visits.

      d.     In support of these fraudulent claims, **CLARK** and **SEVERIO** falsified or directed others to falsify the dates of service on pre-procedure and procedure notes to make it appear as though **CLARK,** and others, preformed minor surgical procedures on the days after the office visits, when, in fact, the minor surgical procedures were performed on the same day as the office visits.

      e.     **CLARK** routinely signed his name to the falsified procedure notes, attesting that he performed the minor surgical procedures on the day after the actual date the minor surgical procedures were performed.

      f.     To further conceal these fraudulent claims, **CLARK** and **SEVERIO** directed others to alter Louisiana Spine & Sports' electronic patient schedule to make it appear as if Medicare beneficiaries, BCBSLA members, and the recipients of benefits of other health care benefit programs who had received office visits and underwent same-day minor surgical

procedures, returned to Louisiana Spine & Sports the following day, and underwent minor surgical procedures.

g.      From in or around June 2005 and continuing through in or around March 2015, **CLARK** and **SEVERIO** caused Louisiana Spine & Sports to submit approximately $515,880 in fraudulent claims for same-day office visits to Medicare and BCBSLA, and were reimbursed approximately $252,468.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-3**
**Wire Fraud**
**(18 U.S.C. § 1343)**

26.     Paragraphs 1 through 20 and 25 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

27.     On or about the dates specified below, in the Middle District of Louisiana and elsewhere, for the purpose of executing the above-described scheme to defraud Medicare and obtain money by materially false and fraudulent pretenses and representations, the defendant, **JOHN EASTHAM CLARK, M.D.**, aided and abetted by others known and unknown to the Grand Jury, did knowingly cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, pictures and sounds, namely, claims for services wherein the actual dates of service were misrepresented, between Baton Rouge, Louisiana, and Little Rock, Arkansas and Mechanicsburg, Pennsylvania, with each transmission constituting a separate count:

| Count | Defendant | Bene-ficiary | Description of Interstate Wire Communication | Approx. Claim Date | Amount Billed | Amount Paid |
|-------|-----------|--------------|----------------------------------------------|--------------------|---------------|-------------|
| 2 | **CLARK** | B.H. | Claim bearing number 531112202043730 submitted in Baton Rouge, LA, and processed in Little Rock, AK | 07/19/2012 | $500.00 | $175.58 |
| 3 | **CLARK** | P.B. | Claim bearing number 531113171318620 submitted in Baton Rouge, LA, and processed in Mechanicsburg, PA | 06/20/2013 | $500.00 | $166.15 |

Each of the above is a violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 4-5
### Health Care Fraud
### (18 U.S.C. § 1347)

28.     Paragraphs 1 through 20 and 25 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

29.     On or about the dates set forth below, in the Middle District of Louisiana and elsewhere, the defendants, **JOHN EASTHAM CLARK, M.D.** and **CHARLENE ANITA SEVERIO,** aided and abetted by others known and unknown to the Grand Jury, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme or artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, BCBSLA, and obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of BCBSLA, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant caused the following false and fraudulent claims to be submitted to BCBSLA:

| Count | Bene-ficiary | Claimed Procedure | Claim Number | Approx. Claim Date | Amount Billed | Amount Paid |
|---|---|---|---|---|---|---|
| 4 | M.S. | Inj Paravert F Jnt L/S 1 Lev | 121235940300 | 08/16/2012 | $375.00 | $32.91 |
| 5 | J.H. | Inj Foramen Epidural L/S | 130140958800 | 01/16/2013 | $500.00 | $43.89 |

Each of the above is a violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 6
## Conspiracy to Commit Wire Fraud and Health Care Fraud
## (18 U.S.C. § 1349)

### The Conspiracy and Its Object

30.    Paragraphs 1 through 20 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

31.    Beginning in or around October 2013 and continuing through in or around March 2015, in the Middle District of Louisiana, and elsewhere, the defendant **JOHN EASTHAM CLARK, M.D.** conspired and agreed with others known and unknown to the grand jury, to commit certain offenses against the United States, that is:

a.    to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such a scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

b.    to knowingly and willfully execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code,

10

Section 24(b), that is, Medicare, BCBSLA, and other health care benefit programs, and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of Medicare, BCBSLA, and other health care benefit programs, in connection with the delivery of and payment for health care benefits and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

32.    It was a purpose of the conspiracy for the defendant to unlawfully enrich himself by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare, BCBSLA, and other health care benefit programs for services that were not medically necessary and not eligible for reimbursement; and (b) diverting proceeds of the fraud for the personal use and benefits of the defendant and his co-conspirators.

### Manner and Means

33.    The manner and means by which the defendant sought to accomplish the object of the scheme included, among others, the following:

a.    Beginning in or around early 2013, **CLARK** sought to establish a UDT laboratory on the premises of Louisiana Spine & Sports capable of performing quantitative confirmatory drug testing ("Louisiana Spine & Sports laboratory").

b.    In or around October 2013, **CLARK** ordered Louisiana Spine & Sports employees to collect and store urine specimens of Louisiana Spine & Sports patients so that when the Louisiana Spine & Sports laboratory became operational and able to perform quantitative confirmatory tests, Louisiana Spine & Sports would have a multitude of specimens to test, and for which to seek reimbursement from Medicare, BCBSLA, and other health care benefit programs.

c.     At **CLARK's** direction, Louisiana Spine & Sports employees stored urine specimens, some of which were stored for months, until in or around March of 2014. At that time, Louisiana Spine & Sports employees, irrespective of the lack of medical necessity, began performing quantitative confirmatory testing on the stored specimens. **CLARK** subsequently directed that claims be submitted for reimbursement to Medicare, BCBSLA, and other health care benefit programs for the quantitative confirmatory testing of the stored specimens.

d.     Moreover, **CLARK**, irrespective of both Medicare's, BCBSLA's, and other health care benefit programs' policies regarding when quantitative confirmatory testing was medically necessary and appropriately reimbursable, directed that every urine specimen collected be submitted for quantitative confirmatory testing, not only for prescribed substances and substances causing unexpected results in initial screens, but also for a multitude of other substances which were neither prescribed nor present in initial screens.  In many cases, quantitative confirmatory tests were ordered for substances as to which there was no reasonable basis to believe the substance would be present or that the test would be useful.

e.     To maximize Medicare, BCBSLA, and other health care benefit programs' reimbursements, **CLARK** directed and caused other Louisiana Spine & Sports employees to submit claims associated with these medically unnecessary quantitative confirmatory tests to Medicare, BCBSLA, and other health care benefit programs.

f.     Beginning in or around October 2013, and continuing through March 2015, **CLARK** caused Louisiana Spine & Sports to bill Medicare, BCBSLA, and other health care benefit programs, at least approximately $3.9 million for the quantitative testing, and was reimbursed at least approximately $1.7 million.

12

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 7-8
### Wire Fraud
### (18 U.S.C. § 1343)

34.     Paragraphs 1 through 20 and 33 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

35.     On or about the dates specified below, in the Middle District of Louisiana and elsewhere, for the purpose of executing the above-described scheme to defraud Medicare and obtain money by materially false and fraudulent pretenses and representations, the defendant, **JOHN EASTHAM CLARK, M.D.**, aided and abetted by others known and unknown to the grand jury, did knowingly cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, pictures and sounds, namely, claims for services that were neither medically necessary or appropriately reimbursable, between Baton Rouge, Louisiana, and Mechanicsburg, Pennsylvania, with each transmission constituting a separate count:

| Count | Defendant | Bene-ficiary | Description of Interstate Wire Communication | Approx. Claim Date | Amount Billed | Amount Paid |
|-------|-----------|--------------|----------------------------------------------|--------------------|---------------|-------------|
| 7 | **CLARK** | B.K. | Claims bearing numbers 531114091267110 531114091267112 submitted in Baton Rouge, LA, and processed in Mechanicsburg, PA | 04/01/2014 | $1208.00 | $580.58 |
| 8 | **CLARK** | J.G. | Claims bearing numbers 531114289215340 531114289215342 submitted in Baton Rouge, LA, and processed in Mechanicsburg, PA | 10/16/2014 | $1208.00 | $580.58 |

Each of the above is a violation of Title 18, United States Code, Sections 1343 and 2.

13

## FORFEITURE ALLEGATIONS

36.     Upon conviction of Count 1 and Counts 4 through 6 contained in this Indictment, the defendant, **JOHN EASTHAM CLARK, M.D.**, and upon conviction of Count 1 contained in the Indictment, the defendant, **CHARLENE ANITA SEVERIO**, shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds of the violations, including but not limited to a sum of money equal to the amount of the gross proceeds of the offenses.

37.     Upon conviction of Counts 1 through 3 and 6 through 8 contained in this Indictment, the defendant, **JOHN EASTHAM CLARK, M.D.,** and upon conviction of Count 1 contained in this Indictment, the defendant, **CHARLENE ANITA SEVERIO,** shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United States Code, Section 2461(c), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations, including, but not limited to a sum of money equal to the amount of proceeds of the offenses.

38.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

UNITED STATES OF AMERICA, by

_____
COREY R. AMUNDSON
ACTING UNITED STATES ATTORNEY

_____
DUSTIN M. DAVIS
ASSISTANT CHIEF
CRIMINAL DIVISION, FRAUD SECTION
UNITED STATES DEPARTMENT OF JUSTICE

_____
ADAM PTASHKIN
ASSISTANT UNITED STATES ATTORNEY

**A TRUE BILL**

**REDACTED
PER PRIVACY ACT**

_____
GRAND JURY FOREPERSON

_____06 - July - 2017_____
DATE

15

| Criminal Cover Sheet | U.S. District Court |
|---|---|

**Place of Offense:**

City          <u>Baton Rouge, Louisiana</u>

County/Parish   <u>East Baton Rouge Parish</u>

**Matter to be sealed:**   ☐No   ☒ Yes

**Related Case Information:**

Superseding Indictment _____ Docket Number _____
Same Defendant _____          New Defendant ___X___
Magistrate Case Number _____
Search Warrant Case No. _____
R 20/ R 40 from District of _____
**Any Other Related Cases:** _____

**Defendant Information:**

Defendant Name:     JOHN EASTHAM CLARK, M.D.

**U.S. Attorney Information:**

AUSA:   Adam Ptashkin          Bar #:   NYBN 5138821

**Interpreter:** ☒ No  ☐ Yes    **List language and/or dialect:** _____

**Location Status:**

Arrest Date   _____
_____  Already in Federal Custody as of
_____  Already in State Custody
_____  On Pretrial Release

**U.S.C. Citations:**

Total # of Counts:   __8__

| <u>Index Key/Code</u> | <u>Description of Offense Charged</u> | <u>Count(s)</u> | Petty/<br>Misdemeanor/<br><u>Felony</u> |
|---|---|---|---|
| <u>18:1349</u> | <u>Conspiracy to commit wire fraud and health care fraud</u> | 1 | Felony |
| <u>18:1343</u> | <u>Wire fraud</u> | 2-3 | Felony |
| <u>18:1347</u> | <u>Health care fraud</u> | 4-5 | Felony |
| <u>18:1349</u> | <u>Conspiracy to commit wire fraud and health care fraud</u> | 6 | Felony |
| <u>18:1343</u> | <u>Wire fraud</u> | 7-8 | Felony |

Date: __7/6/2017__    **Signature of AUSA:** _____

**District Court Case Number (To be filled in by deputy clerk):** _____

| **Criminal Cover Sheet** | | **U.S. District Court** |
|---|---|---|

**Place of Offense:**

City    <u>Baton Rouge, Louisiana</u>

County/Parish  <u>East Baton Rouge Parish</u>

**Matter to be sealed:**  ☐No  ☒ Yes

**Related Case Information:**

Superseding Indictment \_\_\_\_\_  Docket Number  _____
Same Defendant \_\_\_\_\_  New Defendant  <u>  X  </u>
Magistrate Case Number _____
Search Warrant Case No. _____
R 20/ R 40 from District of _____
**Any Other Related Cases:**  _____

**Defendant Information:**

Defendant Name:   CHARLENE ANITA SEVERIO

**U.S. Attorney Information:**

AUSA:   Adam Ptashkin      Bar #:   NYBN 5138821

**Interpreter:**  ☒ No  ☐ Yes     **List language and/or dialect:**  _____

**Location Status:**

Arrest Date  _____
_____   Already in Federal Custody as of
_____   Already in State Custody
_____   On Pretrial Release

**U.S.C. Citations:**

Total # of Counts:   <u> 3 </u>

| <u>Index Key/Code</u> | <u>Description of Offense Charged</u> | <u>Count(s)</u> | Petty/ Misdemeanor/ <u>Felony</u> |
|---|---|---|---|
| <u>18:1349</u> | <u>Conspiracy to commit wire fraud and health care fraud</u> | <u> 1 </u> | Felony |
| <u>18:1347</u> | <u>Health care fraud</u> | <u>4-5</u> | Felony |

**Date:** <u>7/6/2017</u>     **Signature of AUSA:** _____

**District Court Case Number (To be filled in by deputy clerk):** _____